BOORMAN VS. THE AMERICAN EXPRESS COMPANY.

EXPRESS COMPANY: *How it may deny alleged negligence of its agents: Exemption from liability by special contract: Evidence thereof.*

1. An express company may deny any "knowlege or information sufficient to form a belief" in respect to alleged negligence of its servants or agents in transporting goods in its care.

2. Such a company may exempt itself by special contract from liability as insurer; or for the default or negligence of any person to whom the property may be delivered by it, for the performance of any act or duty in respect thereto, off its own routes; or for loss or damage of any package for over $50, unless the just and true value thereof is stated in the receipt; or upon any property not properly packed and secured for transportation; or upon any fragile fabrics, unless so marked upon the package containing it; or upon any fabrics consisting of or contained in glass.

3. Where a receipt for the package, embodying such conditions, is shown to have been in the custody of the plaintiff, a due delivery of it to him, and his assent to its terms, are to be presumed; and it is for him to show that there was no such delivery, or no such assent.

APPEAL from the County Court of *Milwaukee* County.

Action for injuries to a violin carried by defendant for plaintiff from Milwaukee to New York city, and alleged to have been " carelessly, negligently and wrongfully" split and broken by defendant. Answer, that defendant had no knowledge or information sufficient to form a belief as to the alleged neglect and wrongful acts; and that it received the violin under a special agreement, as follows: " Received of *C. Boorman* one box, said to contain instrument, valued at —— dollars, marked Geo. Germunder, New York, N. Y. —— which we undertake to forward to the nearest point of destination reached by this company, subject expressly to the following conditions, namely: This company is not to be held liable for any loss or damage except as forwarders only, nor for any loss or damage by fire, by the dangers of navigation, by the act of God or of the enemies of the government, the restraints of government, mobs, riots, insurrections or pirates, or from or by reason of any of the hazards or dangers incident to a state of war. Nor shall this company be liable for any default or negligence of any person, corporation or association to whom the above described property shall or may be delivered by this company, for the performance of any act or duty in respect thereto, at any place or point off the established routes or lines run by this company, and any such person, corporation or association is not to be regarded, deemed or taken to be the agent of this company, for any such purpose. * * * Nor shall this company be liable for any loss or damage of any box, package, or thing, for over $50, unless the just and true value thereof is herein stated; nor upon any property or thing unless properly packed and secured for transportation; nor upon any fragile fabrics, unless

so marked upon the package containing the same ; nor upon any fabrics consisting of or contained in glass.    The party accepting this receipt hereby agrees to the conditions herein contained."    [Signed by the company's agent.]

On the trial, after the plaintiff had introduced evidence of the shipment, the condition of the instrument when shipped, the manner in which it was packed, its condition immediately after its arrival at New York, and the amount of damage sustained, he produced, upon demand of the defendant, the original receipt, &c., as above stated, which he admitted was delivered to him at the time of the delivery of the violin to defendant; and said receipt, &c., was put in evidence by the defendant.    The court refused to allow defendant to prove that the violin was not broken through its negligence, holding that the answer did not deny the averments of the complaint on that point.    It also refused to allow an amendment of the answer, so as to make it deny absolutely those averments.    Some evidence was then introduced by defendant as to the amount of damage sustained by the plaintiff.    The court instructed the jury as follows : "If the receipt was expressly agreed to, or by fair implication an agreement could be presumed, it might be binding.    The burden of proof is upon the defendant, to show the contract by the agreement of the parties.    He asks me to instruct you that there was an agreement between the parties for the transportation of this violin to New York.    This I decline to do, because the terms and conditions are entirely outside of a simple receipt.    They go to discharge the defendant from its common law liability, and there can be no limitation of this liability except by an express contract, and unless the party taking the receipt knows the terms and conditions therein expressed, there can be no assent to them.    The real question is, whether the plaintiff knew of the stipulations and conditions contained in the receipt.    I do not recollect of any testimony bearing upon that point, except that of the plaintiff,

Boorman vs. The American Express Company.

who appears to be a German, and who required the assistance of an interpreter in giving his testimony before you. He testified that he took the box to the defendant, and asked him how much there was to pay. They told him. He paid them, took the paper, and went away. It is for you to say whether this was a contract. In my opinion it was not, but it is for you to determine."

[The printed case does not show what the verdict or judgment was; but they were in plaintiff's favor, probably for a sum exceeding fifty dollars.] The defendant appealed from the judgment.

*Finches, Lynde & Miller*, for appellant:

1. A common carrier may limit his common law liability by express contract. 3 Hurl. & Nor., 813; 2 id., 693; 78 E. C. L., 527; 71 id., 600; 14 Law and Eq., 340; 6 Mich., 244; 13 Barb., 353; 14 id., 524; 1 Kern., 492; 24 N. Y., 181; 25 id., 442; 24 How. Pr., 292; Am. Law Reg., Vol. 1 (O. S.), Title "Carrier," p. 65. 2. Receipts like the one in question, accepted by the party, make a valid contract. 45 Pa. St., 208; 3 Hurl. & N., 813; 13 Barb., 353; 14 id., 524; 1 Kern., 492; 24 N. Y., 181; 25 id., 442; 24 How. Pr., 292; *F. & M. Bank v. D. & M. R. R. Co.*, 20 Wis., 122.

*Austin, Pereles & Johnson*, for respondent:

1. It is a matter of grave doubt whether a common carrier can limit his liability by special contract. *Falvey v. N. T. Co.*, 15 Wis., 129, 132; *Forward v. Pittard*, 1 Term, 27; *Hollister v. Nowlen*, 19 Wend., 234; *Cole v. Goodwin*, id., 251; *Gould v. Hill*, 2 Hill, 623; *Jones v. Voorhees*, 10 Ohio, 145; *Coggs v. Bernard*, 1 Smith's L. C. (5th Am. ed.), 293, 315 et seq., and cases there cited. 2. As to the liability of a carrier for his own negligence, or that of his servants and agents, it is generally conceded that this cannot be so limited. *Camden & Amb. R. R. v. Burke*, 13 Wend., 611, 627; *Beckman v. Shouse*, 5 Rawle, 179, 189; *New Jersey Steam Nav. Co. v. Merchant's Bank*,

5 How (U. S.), 344, 383; 1 Smith's L. C. (5 Am. ed.), 327, and cases there cited; *Sager v. The Portsmouth S. & P. & E. R. R. Co.*, 31 Me., 228; *Davidson v. Graham*, 2 Ohio St., 133; *Camden & Amb. R. R. Co. v. Baldauf*, 16 Pa. St., 77; *Penn. R. R. Co. v. M'Closky*, 23 id., 523; Am. Law Reg., June, 1866, p. 458; *Wells v. S. N. Co.*, 8 N. Y., 375; *Alexander v. Greene*, 7 Hill, 533; 6 Ind., 416. 3. The consignor or the passenger, upon the payment of freight or fare, is entitled to a given service without conditions other than those imposed by law. He has no reason to suppose that conditions will be imposed. He has a right to suppose that he will receive a proper voucher for his money, and nothing more—such a voucher as will enable him to insist upon the carriage of his goods or person. If something more is inserted in the voucher he receives, he is clearly not bound by it, unless he expressly acquiesces in it, any more than he would be bound by a notice which he *might* have seen, but never *did* see or acquiesce in. *King v. Woodbridge*, 34 Vt., 564; *Western Trans. Co. v. Newhall*, 24 Ill., 466; Redfield on Railways, §§ 9, 10, pp. 264–280; *Mich. Cent. R. R. Co. v. Hale*, 6 Mich., 244; Ang. on Carriers, § 274; 10 Met., 479; *Am. Trans. Co. v. Moore*, 5 Mich., 368; 4 Ohio St., 762; 10 Ohio, 70. The onus is on the carrier to show knowledge and assent on the part of the consignor. Ang. on Carriers, *supra;* Redfield on Railways, § 4, p. 266; *Brook v. Pickwick*, 4 Bing., 218; 2 Greenl. Ev., § 216; *Brown v. Eastern R. R.*, 11 Cush., 97. 4. It was the duty of the carrier, who made the receipt, to ascertain and enter therein the value of the property. He is entitled to know the value, if he desires to do so, to enable him to fix his rates of fare to correspond with his responsibility; and if the consignor deceives him as to the value, he is guilty of such a fraud as will excuse the carrier from liability for an *accidental* loss; but it is the carrier's duty to enquire as to the value, and his exemption from liability by reason of the value being concealed from him has always been put upon the

ground of fraud in the consignor.    Edw. on Bailm., 472; *Phillips v. Earle*, 8 Pick., 182; *Brooke v. Pickwick*, 4 Bing., 218; *Davidson v. Graham*, 2 Ohio St., 131; 1 Smith's L. C. (5th Am. ed.), 319, and cases there cited; *Relf v. Rapp*, 3 Watts & Serg., 21; *Nevins v. Bay State Steamboat Co.*, 4 Bosw., 225.  5. The answer denying any knowledge or information as to negligence, was a virtual confession.    *Hance v. Remming*, 1 Code R. (N. S.), 204; *Edwards v. Lent*, 8 How. Pr., 28; *Fales v. Hicks*, 12 id., 153; *Chapman v. Palmer*, id., 37; *Richardson v. Wilton*, 4 Sandf., 708; *Lewis v. Acker*, 11 How. Pr., 163; *Wood v. Staniels*, 3 Code R., 152; *Shearman v. N. Y. Central Mills*, 1 Abb., 187; *Wesson v. Judd*, id., 254; 1 Whit. Pr., 481.

Dixon, C. J.    The answer of the defendant is a sufficient denial that the violin was carelessly, negligently and wrongfully split and broken as alleged in the complaint, to put the plaintiff upon proof of those allegations, and consequently sufficient to let in the rebutting evidence offered by the defendant.    It was error to reject such evidence.    An answer denying any knowledge or information sufficient to form a belief as to facts presumed to be within the knowledge of the defendant, or of which he can easily inform himself, is bad; but such is not the nature of the facts here put in issue.    The defendant, the express company, which is no more than a co-partnership doing business under that name, transacts its business through a multitude of agents residing in different parts of the country; and the knowledge of such agents is not for this purpose the knowledge of their principals, the proprietors of the company. Neither can the proprietors readily avail themselves of or acquire the knowledge of their agents.    This would be extremely difficult, in the first place, on account of the great number of such agents residing in places remote from each other and from the proprietors themselves; but more especially, because the guilty or negligent agent in every such case is adversely

interested. He might evade inquiry, or give false answers. To hold, therefore, that the proprietors must know the facts, or obtain correct information of them, before they can answer to an action, would, in very many cases, be equivalent to an unqualified denial of justice. We are of opinion that such is not the rule of law, and that the answer in its present form is sufficient.

In deciding this point we way, perhaps, be acting outside of the record. It may be that the business of the company, and the manner in which it is transacted, should have been stated in the answer, and shown at the trial, by way of justifying the form of denial employed; but we assume, as was assumed by counsel at the bar, that this was unnecessary.

The contract embodied in the receipt, if intelligently made, is good in law and binding upon the parties. The court below was of this opinion, but instructed the jury that there was no proof that it was intelligently made, or that the plaintiff knew and assented to its conditions, the burden of which proof, the jury were informed, was upon the defendant. The receipt and contract was shown to have been in the possession of the plaintiff. It was produced by him at the trial, upon notice given by the defendant. We think that the rule of law in such a case is correctly stated in *King v. Woodbridge* 34 Vt., 571–2, that, the paper being shown into the custody of the plaintiff, a due and proper delivery of it to him, and his assent to its terms, are to be presumed, and that the burden is thrown on the plaintiff to obviate these presumptions by proof. It is for the plaintiff, then, to show the circumstances under which the paper came into his possession, that he never assented to its terms, and that there was no such delivery of it as to make it operative as a binding contract.

It is to be observed with reference to the conditions of this receipt, that they do not involve the much vexed question as to whether a common carrier can protect himself by contract

from liability for losses occurring through his own negligence or misconduct, or the negligence or misconduct of his own agents or servants. The conditions in question do not purport to guard the express company against liability for losses thus arising. They purport merely to exempt it from liability as insurer; from losses arising through the default or negligence of any other person, corporation or association to whom the property shall be delivered by the company for the performance of any act or duty in respect thereto, at any point or place off the established routes or lines run by the company; and from liability for any loss or damage of any box or package for over $50, unless the just and true value is stated in the receipt, or upon property not properly packed, or fragile fabrics not so marked upon the package, or fabrics consisting of or contained in glass. All these are conditions which a common carrier may lawfully make; and if assented to by the shipper, we believe there is no conflict of opinion but that they will be binding upon him.

*By the Court.*—The judgment of the county court is reversed, and a new trial awarded.