## BLACK vs. GOODRICH TRANSPORTATION COMPANY.

*August 29 — September 19, 1882.*

COMMON CARRIER. *(1-4) Contracts limiting liability in case of loss.*
NEGLIGENCE: PRESUMPTION. *(5) Non-delivery of goods and admission
of loss presumptive evidence of negligence.*

1. It is well settled that a common carrier of persons or property cannot by any agreement, however plain and explicit, wholly relieve itself from liability for injury resulting from its gross negligence or fraud.
2. It is also settled that in order to exempt the carrier from liability, or to limit the extent of its liability, for injury caused by its own negligence of any kind, the contract must expressly so provide.
3. A contract providing that in case of loss the carrier shall be liable to pay, as damages, a specified sum, will not, without an express stipulation to that effect, relieve the carrier from liability to the full amount of the value of goods lost through its negligence.
4. So, the words "liquor carried at val. $20 per bbl." stamped upon the face of a receipt, if they can be construed into a contract to limit the liability of the carrier to the sum of $20 in case of loss, must be so construed as to limit such liability only in case of loss without the fault of the carrier.
5. The non-delivery of goods intrusted to a carrier, and its admission that the same are lost so that it cannot make delivery, are presumptive evidence of negligence on its part.

APPEAL from the County Court of *Milwaukee* County. Action to recover the value of a barrel of whisky alleged to have been lost while being transported by the defendant company. The action was commenced in justice's court and removed thence, by appeal, to the county court, where it was tried by the court without a jury. The facts are thus stated by Mr. Justice TAYLOR:

"It is admitted on the record that the defendant is and was a common carrier of goods and merchandise from the city of Milwaukee, in this state, to Escanaba, in the state of Michigan, as well as to and from other places; that on the 20th of October, 1880, the plaintiff delivered to the defend-

ant one barrel of 'Anderson Bourbon Whisky,' of the value of $118.25, to be carried by said defendant from the city of Milwaukee to Escanaba, in the state of Michigan; that the defendant received the same for the purpose of being carried from Milwaukee to Escanaba, the said defendant to deliver the same to the consignee at Escanaba, and collect its charges for freight from said consignee; that on the delivery of said barrel of whisky to the defendant it gave a receipt therefor to the drayman of the plaintiff, who shortly thereafter delivered the same to the plaintiff, who retained possession of the same without making any objection thereto until after the loss occurred, for which this action is brought. Such receipt reads as follows:

" 'Received, Milwaukee, October 20, 1880, from *John Black*, in good order, on board of ——, the following articles to be forwarded without delay, as directed in the margin:

| MARKED. | ARTICLES. |
|---------|-----------|
| John Sipchen, Escanaba, Mich. | 1 bbl. whisky, 400 lbs. *Liquor carried at val. $20 per bbl. Half bbls. and kegs in proportion.'* |

"The record shows that the barrel of whisky was not delivered to the consignee as agreed, and that the defendant has refused to give any account of the same, except that, upon inquiry made by the plaintiff, the defendant informed him that it was lost, giving no explanation whatever of the cause of the loss. Upon this state of facts the court below rendered judgment in favor of the plaintiff for the value of the whisky."

The defendant appealed from the judgment.

For the appellant there was a brief by *Goodwin & Benedict*, and oral argument by *Mr. Goodwin*. To the point that the value fixed by the receipt was conclusive upon the shipper in any event, no matter what degree of negligence might

exist, they cited: *Hart v. Pa. Railroad Co.*, 7 Fed. Rep., 630; *Muser v. Am. Express Co.*, 1 id., 382; *Hopkins v. West-cott*, 6 Blatchf., 64; *Wertheimer v. Pa. Railroad Co.*, 1 Fed. Rep., 232.

For the respondent there was a brief by *Johnson Riet-brock & Halsey*, and oral argument by *Mr. Johnson*.

TAYLOR, J.   The appellant claims that the judgment is erroneous, and alleges that according to the contract set out in the receipt it was not liable in case of loss, beyond the sum of $20. It is insisted by the learned counsel for the appellant: (1) That the receipt must be read as an express contract between the parties that in case the whisky was lost or destroyed while in the hands of the appellant as a carrier from any cause or by any means, the damages to be recovered by the respondent for such loss or destruction should be limited to $20, irrespective of its real value. (2) If the contract cannot receive the construction above stated, then it must be construed as an express agreement on the part of the respondent that if the barrel of whisky should be lost or destroyed while in the possession of the appellant as carrier, by any cause or means other than by the negligence or fault of the company, its agents, or servants, the damages to be recovered by the respondent should be limited to the sum of $20.

We are clearly of the opinion that the receipt should not be construed as a contract limiting the liability of the appellant to the sum of $20 irrespective of the value of the goods, in case of loss, under any and all circumstances, whether occurring through the fault or negligence of the appellant, its servants, or agents, or from causes over which they had no control.   We think that it has been settled by the decisions of this court, the supreme court of the United States, and many of the state courts in which the question has been considered, that a common carrier of persons or property cannot, by any

agreement, however plain and explicit, wholly relieve himself from responding in damages to the party injured, when such injury is the result of the gross negligence or the fraud of the carrier, his agents or servants. This rule is by most of the courts founded upon public policy, and by some upon both public policy and a want of consideration to support the agreement. This whole question has been so often, so thoroughly, and so exhaustively discussed in the decisions cited, that it would be a waste of time as well as futile to attempt to add anything in confirmation of the general rule as above stated. *New Jersey Steam Nav. Co. v. Merchants' Bank*, 6 How., 344; *Railroad Co. v. Lockwood*, 17 Wall., 357; *Bank of Kentucky v. Adams Exp. Co.*, 93 U. S., 174; *Candee v. W. U. Tel. Co.*, 34 Wis., 471; *Hibbard v. Telegraph Co.*, 33 Wis., 558; *Morrison v. Construction Co.*, 44 Wis., 405. Another rule equally well settled by the authorities is that, in order to exempt the carrier from liability for the want of ordinary care or negligence of any kind on the part of its servants or agents, the contract must so expressly provide; and that in the absence of such express agreement it will be presumed that there was no intention on the part of the carrier to exempt himself from such liability.

In the case of *New Jersey Steam Nav. Co. v. Merchants' Bank, supra*, the court says: "The burden of proof lies on the carrier, and nothing short of an express stipulation by parol or in writing should be permitted to discharge him from duties which the law has annexed to his employment. The exemption from these duties should not depend upon implication or inference, founded on doubtful and conflicting evidence, but should be specific and certain, leaving no room for controversy between the parties." This rule is approved by the court of appeals in New York, notwithstanding the fact that that court has gone further than most of the other courts of the country in upholding contracts exempting carriers from liability for the negligence of their servants,

when such exemption has been clearly and expressly stipulated for. See *Wescott v. Fargo*, 61 N. Y., 542.

It is urged by the learned counsel for the appellant that a contract made with a carrier, that in a case of loss the carrier shall be liable to pay as damages a sum specified in the contract for carriage, is not a contract limiting the liability of the carrier within the meaning of the rule above stated, and that such agreement is binding on the parties, irrespective of the cause of the loss. The learned counsel has cited us to some cases in the federal circuit courts which seem to sustain his position. It will, however, be seen from an examination of the cases cited, that most of them were cases where the stipulation was limited to the value of packages when their real value was not disclosed by the owner, and of which the carrier could not be supposed to have knowledge. The strongest case cited for the appellant is the case of *Hart v. Railroad Co.*, 7 Fed. Rep., 630. This was the case of the shipment of horses, and the contract was " that the carrier assumes a liability on the stock to the extent of the following agreed valuation: If horses, . . . not exceeding $200 each; if a chartered car, on the stock or contents in same, not exceeding $1,200 for the car load." Under this agreement the circuit court held that the shipper could not recover beyond the sum of $200 for any one of the horses killed during their transportation. The learned circuit judge places his decision on the well settled rule " that in cases where common carriers can limit their liability at all by contract, stipulation, or notice, there is this qualification, 'that the limitation shall be just and reasonable in the eye of the law.' "

In that case one of the horses shipped was killed, and the owner claimed that he was worth $15,000, and sought to recover damages to that amount. The court held, that as there was no evidence showing that the carrier had any knowledge that the horse had any extraordinary value, and

as the contract fixing the value in case of loss was an amount equal to the value of ordinary horses, the contract was a fair one on the part of the carrier, and the shipper having signed the contract fixing the value without disclosing the fact that the horse was of the extraordinary value claimed, it would be unjust to permit him to recover beyond the value fixed in the contract. This case goes upon the principle of those cases which hold that carriers and express companies may limit the damages to be recovered for the loss of packages delivered to them, in case of loss or damage, when the true value is not made known to the carrier. The doctrine of this case is sustained by the following cases: *Muser v. Exp. Co.*, 1 Fed. Rep., 382; *Belger v. Dinsmore*, 51 N. Y., 166; *Kirkland v. Dinsmore*, 62 N. Y., 171; *Magnin v. Dinsmore*, 70 N. Y., 410; *Sewell v. Allen*, 6 Wend., 347; *Phillips v. Earle*, 8 Pick., 182. The reason of this rule is very briefly stated by Justice WALLACE in the case of *Muser v. Exp. Co.*, 1 Fed Rep., 383, as follows: "The right of the carrier to exact fair information as to the value of property confided to his care has always been recognized. He has the right to insist that his compensation be measured by his risk, and obviously the degree of care which he will exercise will measurably depend upon the extent of the responsibility he may incur. While it is not primarily the duty of the shipper to inform the carrier of the nature or value of the contents of the parcel sent, the carrier has the right to make inquiry and receive a true answer; and any concealment on the part of the shipper, intended to mislead the carrier as to the character or value of the property, and which does mislead, is a fraud which absolves the carrier from responsibility." A similar rule as to the responsibility of the carrier has been adopted by this court in like cases. See *Boorman v. Exp. Co.*, 21 Wis., 152.

Admitting that the respondent must be charged with knowledge of the words stamped upon the face of the receipt

given to him for the barrel of whisky, and to have assented to any limitation of liability which they fairly secure to the appellant, we are clearly of the opinion that they do not relieve the transportation company from liability to the full amount of the value of the whisky, if the same was lost through the negligence or carelessness of the company, its agents or servants.

The courts all seem to hold that a carrier will not be held to have limited his liability against his own or his agent's negligence, unless his contract expressly so provides. In interpreting his contract it will not be so construed except upon the plain language of the contract. If the words stamped upon this contract can be construed into a contract to limit the liability of the appellant to the sum of $20 in case of loss, it must be so construed as to limit such liability only in case of loss without the fault of the appellant, his agents or servants. This was so held in the case of *Wescott v. Fargo*, 61 N. Y., 543.

In that case the receipt taken for the property shipped contained the following clause: "Nor shall this company be liable for any loss or damage of any box, package, or thing for over $50, unless the just and true value thereof is herein stated." The learned justice who delivered the opinion in that case, after admitting that under the decisions of that court the contract was binding on the shipper, says: "The only question open for discussion is the correct construction of the words used. Does the phrase, 'any loss or damage,' include losses, etc., caused by the negligence of the defendant?" And, after a discussion of the evidence, he further says: "It is only necessary to examine the point whether the clause in the defendant's receipt is sufficient to exempt it from losses occasioned by negligence. This point must now be regarded as settled by recent decisions in this court and in the court of appeals;" citing the cases of *Belger v. Dinsmore*, 51 N. Y., 166; *Steers v. Liverpool Steamship Co.*, 57 N. Y., 1;

and *Magnin v. Dinsmore*, 56 N. Y., 168. He then adds: "The result of these cases is, that it is lawful for a carrier to make such a contract as was entered into in the present case, exempting him from liability, and that he may, by clear and distinct expressions, relieve himself from losses occasioned by his own negligence. On the other hand, general words, such as that he 'will not be liable for loss, or detention, or damage,' are not to be construed to extend to losses, etc., occasioned by negligence. The words are to be taken most strongly against the party whose language they are, and who is in an advantageous position, in fixing the terms of the contract."

This court adopted substantially the same rule in the case of *Morrison v. Construction Co.*, 44 Wis., 405. In that case the railroad company gave a receipt on the shipment of the plaintiff's horses, which this court construed to mean that the horses were shipped at the owner's risk. This court held that the receipt limited the liability of the company to accidents over which the company had no control, and for which they were not in fault, but did not limit its liability for injuries arising from the carelessness or fault of its agents or managers. The former learned chief justice of this court, who argued the case in this court for the company, admitted in his argument that the company would be liable for the negligence or misconduct of its agents or employees, notwithstanding the provision in the receipt that they were shipped at the "owner's risk." Justice Orton, in delivering the opinion, says: "The respondent's liability depends upon the carelessness or fault of its agents, employees, or managers."

There being nothing in the contract in the case at bar which can be properly construed to limit the liability of appellant for the loss of the respondent's property through the negligence or carelessness of the appellant, his agents or servants, the only other question in the case is, do the findings of the court below show that the loss arose upon the

carelessness or negligence of the appellant? Upon this point the learned judge found " that the appellant failed to convey and deliver said freight, but lost the same, and has failed to give any explanation of the loss." We are very clear that this finding raises a presumption that the property was lost through the fault of the appellant, its servants or agents. If the property was not lost through the fault of the appellant or its agents, it was very easy for it to show the fact; and, on the other hand, it would be very difficult for the respondent to show, by affirmative proof, the exact manner of its loss. We must hold, therefore, that the default of the appellant in not delivering the goods as it contracted to do, and its admission that the same are now lost so that it cannot make delivery, is presumptive evidence of negligence on its part. *Steers v. Steamship Co.*, 57 N. Y., 1–6. In this case it was held evidence, tending to prove gross negligence on the part of the carrier, that the goods of the plaintiff had been received on board the steamship by the company's servant, and that " at the end of the voyage the defendant did not produce it nor in any way account for its non-production, and all inquiry on the part of the owner was ineffectual."

In the case of *Magnin v. Dinsmore*, 56 N. Y., 173, there was proof of a non-delivery to the consignee at Memphis, and that some months after the shipment, and within a year, the box in which the goods had been shipped was picked up on the east shore of the river empty, and this was held sufficient evidence to go to the jury on the question of negligence on the part of the carrier. A similar ruling was made by this court in the case of *Kirst v. Railway Co.*, 46 Wis., 491. Upon the findings of fact by the court below we are clearly of the opinion that the respondent was entitled to recover the value of the barrel of whisky receipted for by the appellant.

*By the Court.*— The judgment of the county court is affirmed.